## Appellate Department, Superior Court, San Diego

[Crim. A. No. 196365.   June 30, 1955.]

THE PEOPLE, Appellant, v. ROBERT JOHN VILLARINO, Respondent.

J. F. DuPaul, City Attorney (San Diego) and John S. Rhoades, Deputy City Attorney, for Appellant.

Edgar G. Langford for Respondent.

THE COURT.—The defendant was charged with a violation of the City of San Diego Ordinance, section 52.65, and upon motion therefor it was ordered dismissed by the municipal court wherein it was pending.

Judge James C. Toothaker, judge of the municipal court, prepared a written opinion which we think fully and fairly states the facts in the case and correctly disposes of the points of law involved. We therefore adopt his opinion as our own. It is as follows:

"Defendant moves to dismiss the complaint against him on the ground that the city ordinance involved is in conflict with Health and Safety Code, section 11721, and therefore unconstitutional under article XI, section 11 of the California Constitution. A previous motion to dismiss was denied on the ground that the complaint stated a public offense under the Health and Safety Code, and that the prosecution was accordingly entitled to proceed regardless of any invalidity of the city ordinance. A subsequent motion of defendant to compel the prosecution to elect as to whether it was going to proceed under the provisions of Health & Safety Code, section 11721, or under city ordinance, section 52.65, was granted, pursuant to stipulation by the prosecution. The prosecution has elected to proceed under the city ordinance and has specifically stated that it does not desire to proceed under the state law, thus raising directly the question of the validity of the city ordinance.

"The pertinent sections of the law involved are as follows: Article XI, section 11 of the California Constitution:

" 'POLICE POWER OF COUNTIES, CITIES AND TOWNSHIPS. Sec. 11. 'Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.'

"Section 11721 of the California Health and Safety Code:

" 'PUNISHMENT OF ADDICTS.

" 'No person shall unlawfully use or be addicted to the unlawful use of narcotics. Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be placed on probation for not more than five years and the court shall sentence the person convicted to not less than 90 days, nor more than one year in the county jail as a condition of the probation.'

"Section 52.65 of the San Diego city ordinance:

" 'USE OF OR ADDICTION TO NARCOTICS—PROHIBITED.

" 'No person within the City of San Diego shall be addicted

to the use of narcotics, or shall use narcotics, or shall be under the influence of narcotics except when narcotics are or have been administered by or under the direction of a person licensed by the State of California to prescribe and administer narcotics.

" 'The term "narcotics" as used in this section shall be defined in accordance with the definition contained in Section 1101 of the California Health and Safety Code.'

"No issue is raised in this case concerning the portion of the city ordinance dealing with being under the influence of narcotics. The complaint charges that the defendant 'was a person unlawfully addicted to the use of narcotics and used narcotics.'

"The case of *In re Sic* (1887), 73 Cal. 142 [14 P. 405], was the earliest expression of the California Supreme Court on this general problem. In holding invalid an ordinance of the city of Stockton pertaining to the smoking of opium, the Supreme Court stated (p. 146):

" 'The section plainly covers the same ground as the Penal Code. It was probably intended to cover some supposed defects in the Penal Code, still it denounces as criminal precisely the same acts which are attempted to be prohibited by the code. It is admitted that no ordinance is valid which conflicts with the general laws of this state.'

"At page 148, the court went on to say:

" 'It would seem that an ordinance must be conflicting with the general law which may operate to prevent a prosecution of the offense under the general law. The constitution provides that no one shall be twice put in jeopardy for the same offense. If tried and convicted or acquitted under the ordinance, he could not be again tried for the same offense under the general law. The contrary doctrine has been held in some states, but this conclusion seems more in consonance with reason and justice.'

"And in conclusion the court stated (p. 149):

" 'Holding these views, we think the respondent must be discharged. It will be observed that we only hold that there is a conflict where the ordinance and the general law punish precisely the same acts. We do not wish to be understood as holding that the sections of the ordinance which make criminal other acts not punishable under the general law are void because the legislature has seen fit to legislate upon the same subject.'

"The same general result was reached in *In re Mingo*, 190 Cal. 769 [214 P. 850], where the court further held it was beyond the power of the Legislature to authorize local legislation which was in conflict with the state law.

"In *In re Portnoy*, 21 Cal.2d 237 [131 P.2d 1], a Riverside County ordinance pertaining to gambling was held to be in conflict with Penal Code, section 338a, and therefore unconstitutional. The court recognized that 'the control of gambling activities is a matter concerning which local governments possess power to enact and enforce local regulations not in conflict with general laws, for the purpose of supplementing those laws' (p. 239). However, the court felt that there was a duplication of the general law in the city ordinance thus rendering the ordinance unconstitutional. 'Insofar as the provisions of Ordinance No. 248 purport to prohibit acts which already are made criminal by the Penal Code, it is clear that they exceed the proper limits of supplementary regulations and must be held invalid because in conflict with the statutes which they duplicate. *Pipoly* v. *Benson, supra*, 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]; *In re Sic*, 73 Cal. 142 [14 P. 405]; *In re Mingo*, 190 Cal. 769 [214 P. 850]; *Ex parte Daniels*, 183 Cal. 636, 645 [192 P. 442, 21 A.L.R. 1172].' (P. 240.) In rejecting a contention of the People that the difference in wording of a portion of the ordinance made it broader in scope than the state law and therefore valid, the court pointed out that in the chief essentials, the two laws were similar in nature. At page 241 the court said:

" 'The ordinance, like the statute, contains as an integral part of the description of the prohibited acts the phrase "upon the result of the action of which money or other valuable thing is staked or hazarded." The words "may be" appearing in the ordinance are used only in connection with the additional descriptive phrases dealing with the operation of the machines. Thus the requirement is identical under both the statute and the ordinance with respect to an essential element of the crime, the hazarding of money. It follows that section 4 of the ordinance results in an unconstitutional duplication of section 330a of the Penal Code and is therefore invalid.'

"In *Pipoly* v. *Benson*, 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], a case wherein the court held a Los Angeles city ordinance pertaining to traffic unconstitutional as being in conflict with the state law, the court reviewed generally the different types of situations where local ordinances may be

invalid because in conflict with the state law. Although the case is not directly in point inasmuch as it pertains to a situation where the state law was deemed to cover the entire field, thus leaving no room for local regulations of any sort, the court discussed all of the various situations where a local ordinance may be invalid because of being in conflict with the state law. The court, after quoting with approval from *In re Sic, supra,* went on to say (pp. 370-371):

" 'Paradoxical as it may seem, it is apparent that an ordinance and a statute may be identical under this rule and yet the ordinance is invalid because within the constitutional provision, it is in conflict with the statute. (*Ex parte Daniels, supra,* p. 645.) The invalidity arises not from a conflict of language but from the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground. Only by such a broad definition of "conflict" is it possible to confine local legislation to its proper field of supplementary regulation.'

"It is true that in numerous California cases local ordinances have been upheld as not being in conflict with the state law where the ordinance in question provided for the punishment of a different offense than that covered in the state law. In *Ex parte Hong Shen,* 98 Cal. 681 [33 P. 799], an ordinance of San Francisco County prohibiting the sale of opium except on the written prescription of a physician was upheld, where the state law in question merely provided for certain registration requirements where opium was sold. The court said (p. 685):

" 'The offenses being different, there is no violation of the constitutional inhibition against putting one twice in jeopardy for the same offense.'

"The court pointed out that the state had not legislated on the question of sales by physicians, saying (p. 685):

" 'So in the action at bar, the legislature has simply prohibited the sale of opium and certain other poisons unless a certain record is kept. It has not directly authorized the sale of opium without the prescription of a physician; it has not legislated upon that subject at all except in providing that where a physician's prescription is presented, no other record need be kept. The city has gone further than the statute and provided that no opium shall be sold without a prescription. While the regulation is different from that of the state there is no conflict and therefore it is not in violation of the provision of the constitution quoted above.'

"In *In re Iverson*, 199 Cal. 582 [250 P. 681], the Supreme Court upheld a city ordinance making it an offense to fill prescriptions for an alcoholic beverage exceeding eight ounces of alcoholic liquor. The state law restricted the filling of prescriptions where the alcoholic liquor exceeded sixteen ounces. The state law further specifically provided that nothing in the act should be construed as limiting the power of local governing bodies to enact additional provisions. The court held the ordinance not to be in conflict with the state law, saying (p. 590):

" 'As the offense legislated against by the ordinance is not the same as the offense proscribed by the state law there is no conflict.'

"In *In re Hoffman*, 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75], wherein a city ordinance requiring a higher percentage of solids in milk than required by the state law was upheld, the court pointed out that inasmuch as the city had imposed additional regulations over and above the state law, the two laws were actually different and accordingly the local ordinance was not unconstitutional.

"In *Markus* v. *Justice's Court*, 117 Cal.App.2d 391 [255 P.2d 883], the court had before it a Mendocino County ordinance relating to the keeping and control of dogs. Defendant's appeal was based, among other things, on the ground that the ordinance was unconstitutional since the state statute had completely occupied the field. The court held that proper supplementary legislation by the local governing body was permissible to the extent that there was no duplication of the state law. The court, in recognizing that the county could not duplicate the state law on the subject, summarized the various cases by saying:

" 'An ordinance is void which prohibits the same acts which are forbidden by a state law to the extent of the duplication.' (Citing cases.)

"By way of dictum the court held a portion of the ordinance to be invalid wherein it covered the same violation set forth in the state law, but held the defendant was not affected by this portion of the ordinance. At page 397 the court said:

" 'The power of the county therefore is limited only by the Constitutional provision authorizing its legislative body to make and enforce within its boundaries such local regulations as would not be in conflict with the provisions of general law (Const., Art. XI, § 11) . . . However, there is a conflict

between the statute and the ordinance to this extent, that the statute expressly and the ordinance generally prohibits dog owners from permitting their dogs to roam upon farms whereon are being kept livestock and domestic fowls; and as to offenses coming within the statutory inhibition the ordinance may not operate. (*In re Sic, supra*; *In re Mingo, supra*.)'

■ "From a consideration of the foregoing cases, it is apparent that a city ordinance which in effect duplicates the state law as to public offenses is, to the extent of the duplication, in conflict with the state law within the meaning of Article XI, section 11, of the California Constitution. As stated in the Pipoly case (*ante,* p. 4), although it may seem paradoxical to say that two laws similar in nature are in conflict with each other, nevertheless such is the result of the California cases on this subject. To hold otherwise would result in a continuous conflict of jurisdiction between the state and the local governing body.

■ "The principal question in the present case, accordingly, is whether section 52.65 of the San Diego city ordinances is essentially a duplication of the provisions of Health and Safety Code, section 11721, and therefore invalid. It is the court's conclusion that the portion of the city ordinance involved herein duplicates the offenses set forth in the Health and Safety Code and that accordingly the ordinance to that extent conflicts with the state law and is unconstitutional. No opinion is expressed concerning the portion of the ordinance dealing with a person 'under the influence of narcotics.'

"The state law provides:

" 'No person shall unlawfully use or be addicted to the unlawful use of narcotics.'

"The city ordinance provides:

" 'No person within the City of San Diego shall be addicted to the use of narcotics, or shall use narcotics . . . except . . .'

"In essence, the state law says that no person within the State of California shall unlawfully use or be addicted to the unlawful use of narcotics, or to state it conversely, that no person within the State of California shall use or be addicted to the use of narcotics except in those instances where such use is lawful, that is to say, where the narcotic has been lawfully administered by or under the direction of a person authorized by the State of California to prescribe and administer narcotics. It would appear that the city ordinance in essence provides exactly the same thing in slightly different

wording. The ordinance provides that no person within the City of San Diego shall be addicted to the use of narcotics or shall use narcotics except when the narcotics have been administered by or under the direction of a person authorized by the State of California to prescribe and administer narcotics, or to state the same thing in a different way, the ordinance provides that no person within the city of San Diego shall be addicted to the use of narcotics or shall use narcotics except where such addiction or use is lawful.

"It should be noted that the only actual difference in the two laws is the omission of the words 'unlawfully' and 'unlawful' in the city ordinance. Yet the ordinance *in effect* includes those words by adding the exception as to the lawful use. It does not seem likely that the city ordinance was meant to punish a lawful use of narcotics. On the contrary, logic and reason both point to the conclusion that what is prohibited is the unlawful use or the unlawful addiction, which is precisely the same thing which is prohibited under the state law.

"The present case illustrates forcefully the situation mentioned in *Pipoly* v. *Benson, supra,* where the court stated:

" 'The invalidity arises . . . from the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground.'

"If this ordinance were permitted to stand, it would appear likely that if the defendant Robert John Villarino, on the 19th day of January, 1955, actually used narcotics or was addicted to the use of narcotics, he could be prosecuted either through the district attorney's office on a violation of the Health and Safety Code, or through the city prosecutor's office on a violation of the city ordinance, depending on which filed the first complaint. The situation would be further complicated by the fact that different punishments are provided under the two laws. The state Legislature has seen fit to provide for a mandatory minimum 90-day jail sentence to be imposed as a condition of probation. The city council has made section 52.65 a regular misdemeanor, the entire sentence for which could be suspended at the discretion of the court.

"No definition of the term 'addict' appears in the city ordinance. Section 11009 of the Health and Safety Code provides that an addict is one who 'unlawfully uses or is addicted to the unlawful use of narcotics.' Since no definition appears in the city ordinance it would appear that the definition in

the Health and Safety Code would apply to the portion of the ordinance pertaining to addiction, inasmuch as the Legislature has seen fit to cover the subject. Applying this definition to the city ordinance would make it doubly clear that the acts prohibited by the city ordinance are the 'unlawful' use or addiction to the 'unlawful' use of narcotics. The prosecution argues that perhaps the city council had in mind a different definition of the term 'addict.' It would seem that if the council intended a different definition to apply, it would have been a simple matter to have so stated. Moreover, even though the council had desired to insert a different definition in the ordinance, inasmuch as the Legislature has covered the subject as to what an 'addict' is, it would seem that to provide a different definition would have resulted in an express conflict in the two laws and the invalidity now existing would not have been eliminated.

"It should also be noted that complaints under the two laws would of necessity be worded in practically identical language. The present complaint charges that the defendant '. . . was a person unlawfully addicted to the use of narcotics and used narcotics.' Substantially similar wording would have been used if the complaint had been brought under the Health and Safety Code.

"Inasmuch as the city ordinance, insofar as it applies to the use of narcotics or addiction to narcotics is a duplication of the state law, it is unconstitutional and void. In view of the announced position of the prosecution that it does not desire to proceed under the Health and Safety Code, the motion to dismiss the complaint filed under the city ordinance is hereby granted. This ruling, of course, does not prohibit the People from filing a new complaint under the Health and Safety Code."

It is therefore ordered that the judgment of dismissal be and it is hereby affirmed.